**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **PLANNED FURNITURE** | : | |
| **PROMOTIONS, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **5:03CV20 (DF)** |
| | : | |
| **BENJAMIN S. YOUNGBLOOD, INC.,** | : | |
| **d/b/a HONEY CREEK HOME** | : | |
| **FURNISHINGS; BENJAMIN S.** | : | |
| **YOUNGBLOOD; LAURA** | : | |
| **YOUNGBLOOD; CITIZENS BANK OF** | : | |
| **FORT VALLEY, GEORGIA; UNITED** | : | |
| **STATES INTERNAL REVENUE** | : | |
| **SERVICE; STATE OF GEORGIA** | : | |
| **DEPARTMENT OF REVENUE,** | : | |
| | : | |
| **Defendants.** | : | |

# O R D E R

Currently pending before the Court in this interpleader action is a Motion for
Summary Judgment filed by Plaintiff Planned Furniture Promotion, Inc. ("PFP") (tab 49)
and a Motion for Summary Judgment filed by Defendant United States of America, on
behalf of the Internal Revenue Service ("IRS") (tab 55).  The parties to this action each
claim entitlement, in varying amounts, to $110,632.24 in proceeds from the liquidation sale
of a now-defunct business venture formerly known as Honey Creek Home Furnishings.
PFP has moved for summary judgment with respect to the counterclaims of all defendants.
The IRS has moved for summary judgment on its cross-claim against Defendant Citizens
Bank of Fort Valley, Georgia.  Each motion will be addressed separately.

## I.    FACTS

On February 4, 1999, Defendants Benjamin and Laura Youngblood took out a loan with Defendant Citizens Bank of Fort Valley, Georgia ("the Bank"), in the amount of $550,000.  The Youngbloods obtained the loan to help finance their furniture business.  To secure their debt, the Youngbloods granted the Bank a security interest in "ALL INVENTORY, ACCOUNTS, FURNITURE, FIXTURES, EQUIPMENT, ALL ASSETS NOW OWNED OR HEREAFTER ACQUIRED OF OLD SALEM FURNITURE LOCATED AT 3565 HWY 205, CONYERS, GA & ANY OTHER LOCATION WHERE BUSINESS IS TRANSACTED."  Loan Agreement, tab 21,  Ex. A.  Because the Youngbloods used the loan proceeds to purchase the collateral specified in the security agreement, the Bank obtained a purchase money security interest which was perfected by the filing of a UCC-1 financing statement on February 22, 1999.  Both the Loan Agreement and the financing statement list the debtors as Benjamin Scott Youngblood and Laura B. Youngblood.  Fin. Stmt., tab 21, Ex. B.  Not long after taking out this loan, on February 25, 1999, the Youngbloods' furniture business was incorporated as "Benjamin S. Youngblood, Inc."  Def. IRS Stmt. of Undisputed Material Facts, tab 53, Ex. A.  The Bank was not informed of this incorporation and the financing statement filed by the Bank in conjunction with the Youngbloods' loan was never updated to indicate the change.

On July 9, 2001, the Youngbloods entered into a Loan Modification Agreement with the Bank, changing the terms of the original loan to reflect a new loan amount of $474,872.93.  With respect to the collateral, the Modification Agreement referenced the 1999 financing statement and recited the same collateral with a minor exception.  The new

agreement replaced the phrase "OLD SALEM FURNITURE" with "OLD SALEM FURNITURE AKA HONEY CREEK HOME FURNISHINGS." Mod. Agrmt., tab 21, Ex. C. The collateral listed in the 1999 financing statement was not amended to identify the trade name Honey Creek Home Furnishings. The 2001 Modification Agreement again listed Benjamin Scott Youngblood and Laura B. Youngblood as debtors.

On March 1, 2002, after experiencing financial difficulties, Benjamin S. Youngblood, Inc., d/b/a Honey Creek Home Furnishings ("Honey Creek") entered into a Sale Promotion Consulting Agreement ("SPC Agreement") with Plaintiff PFP pursuant to which PFP was hired to help Honey Creek liquidate its assets. Under the terms of the SPC Agreement, fifty percent of the profits were to be distributed to the Bank for application toward the Youngbloods' secured debt and fifty percent of the profits were to be retained by PFP as compensation for its services. Once the Bank sent written notice to PFP that it had been paid in full, then any remaining profits would be paid to Honey Creek. In addition, Benjamin and Laura Youngblood were to be paid sales personnel commissions for their services.

To secure Honey Creek's obligations under the SPC Agreement, PFP obtained a security interest in all of Honey Creek's current and after-acquired inventory and all proceeds resulting from the sale. On March 13, 2002, a letter agreement between PFP, Honey Creek, and the Bank, confirmed PFP's authority under the SPC Agreement to deliver to the Bank any payments otherwise owed to Honey Creek for the purpose of satisfying the Youngbloods' secured obligation. Importantly, the letter agreement also included a provision by which the Bank consented to subordinate its security interest in the

Youngbloods' collateral to PFP's security interest.  PFP perfected its security interest by filing a financing statement on March 22, 2002.  The liquidation sale was carried out and, pursuant to the parties' agreement, PFP made payments to the Bank totaling $150.677.00 as follows:

                    March 18, 2002 . . . . . . . .   $123,406.00
                    April 23, 2002 . . . . . . . . .   $1,682.25
                    April 23, 2002 . . . . . . . . .   $20,000.00
                    April 24, 2002 . . . . . . . . .   $2,470.00
                    April 24, 2002 . . . . . . . . .   $1,682.25
                    May 7, 2002 . . . . . . . . . .   $1,436.50

In the meantime, Defendant IRS had assessed tax deficiencies against Benjamin S. Youngblood, Inc. in the amount of $106,743.53.  These deficiencies reflect unpaid federal employment (Form 941) taxes for the fourth quarter of 2000, all quarters of 2001, and the first quarter of 2002, and unpaid unemployment taxes (Form 940) for 2001.   To protect the validity of its statutory lien interest as against Benjamin S. Youngblood, Inc.'s other creditors, the IRS filed five Notices of Federal Tax Liens against Benjamin S. Youngblood, Inc. as follows:

                    March 11, 2002 . . . . . . . .   $17,681.93
                    May 7, 2002 . . . . . . . . . .   $57,872.29
                    July 3, 2002 . . . . . . . . . .   $1,808.39
                    July 18, 2002 . . . . . . . . .   $22,646.92
                    October 21, 2002 . . . . . . .   $6,734.00

On March 3, 2003, the Bank assigned to Laura Youngblood's parents, Mr. John P. Beddingfield and Mrs. Susan F. Beddingfield, "[a]ll promissory notes and other indebtedness owed to the Citizens Bank by Benjamin Scott Youngblood and Laura B. Youngblood." Def. Bank's Stmt. of Undisputed Mat. Facts, tab 21, Ex. E.  This assignment included the Bank's interest in the collateral described in the February 4, 1999 security

4

agreement and financing statement, in addition to the right "to receive sale proceeds or other monies from Planned Furniture Promotions, Inc. [pursuant to the SPC Agreement] . . . [or] as a result of that certain interpleader action now pending." *Id.*

PFP now holds $110,632.24 in net proceeds from the liquidation sale and seeks to keep $49,354.80 for itself to satisfy Honey Creek's obligations under the SPC Agreement. PFP has proposed to pay the remaining balance either to the IRS to satisfy its lien interest or to the Registry of the Court. The IRS has consented to PFP's proposal and argues that it is entitled to the remaining balance to pay off Benjamin S. Youngblood, Inc.'s federal tax liability. Additionally, the IRS moves for summary judgment on its cross-claim against the Bank seeking to recover funds paid to the Bank by PFP before this suit commenced. The IRS argues that disgorgement is appropriate because its federal tax lien on the sale proceeds is superior to the Bank's security interest in the same proceeds.

PFP filed this interpleader action pursuant to O.C.G.A. § 23-3-90 in the Superior Court of Peach County, Georgia, on November 27, 2002. The IRS timely filed a Notice of Removal in this Court. Jurisdiction in this Court rests on 28 U.S.C.A. § 1444 (West 1994).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also **Celotex Corp. v. Catrett***, 477 U.S. 317, 322 (1986). A genuine issue of material fact necessary to defeat a properly supported motion for summary judgment arises only when "the evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986).  The Court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but may not make credibility determinations or weigh the evidence.  *See **Anderson***, 477 U.S. at 249.  Finally, it should be remembered that "the evidence presented cannot consist of conclusory allegations or legal conclusions." ***Avirgan v. Hull***, 932 F.2d 1572, 1577 (11th Cir. 1991).

**III.   LEGAL DISCUSSION**

   *A.   PFP's Motion for Summary Judgment*

   In its motion for summary judgment PFP seeks to retain $49,354.80 of the $110,632.24 it holds as proceeds from the liquidation of Honey Creek's assets.  This figure, which is not disputed by any party, represents the amount due PFP under the SPC Agreement it entered with Benjamin S. Youngblood, Inc. d/b/a Honey Creek Home Furnishings.  PFP also requests permission either to disburse $19,567.87 in sales personnel commissions to Benjamin and Laura Youngblood or to interplead that amount with the Registry of the Court for some other appropriate distribution.  Finally, PFP indicates that it has worked out an arrangement with the IRS whereby the remaining balance—$41,700.57—would be paid to the IRS in partial satisfaction of its federal tax lien. With respect to the remaining defendants (Benjamin S. Yougblood; Laura Youngblood; and Mr. and Mrs. Beddingfield as assignees of Citizens Bank), PFP contends that none have viable claims against the sale proceeds.  Accordingly, PFP seeks to have those defendants' claims dismissed and to have judgment entered in its favor.  The Court will

address each claim against PFP in turn.[1]

### 1.   Laura Youngblood

The Court begins by noting that Laura Youngblood does not claim any interest in the personnel commissions owed her under the SPC Agreement ($9,851.77).  *See* Answer of Laura Youngblood, tab 7, at 3 ¶21-22 ("Regardless of the [SPC] Agreement, Laura Beddingfield Youngblood hereby disclaims any interest in the proceeds of sale and prays that the same be paid to lawful creditors, as determined by the Court.").  She does, however, assert a counterclaim against PFP for failing to comply with the terms of the SPC Agreement or, in the alternative, for negligently carrying out its obligations thereunder.  *Id.* at 5 ¶¶2-3.  In its motion for summary judgment, PFP notes that Laura Youngblood has not offered any evidence to support her counterclaim.  PFP therefore maintains that judgment as a matter of law in its favor is appropriate.  The Court agrees and hereby grants PFP's motion for summary judgment as to this counterclaim.

### 2.   John P. Beddingfield and Susan F. Beddingfield

As confirmed by the letter agreement between PFP, Honey Creek, and the Bank dated March 13, 2002, PFP is authorized to deliver directly to the Bank any sale proceeds otherwise due Honey Creek under the SPC Agreement.  The Bank, in turn, is entitled to apply such proceeds toward the indebtedness owed by Honey Creek to the Bank.  About a year after the letter agreement was entered, on March 3, 2003, the Bank assigned to Mr. and Mrs. Beddingfield all of its rights under the original loan, including its right to receive

---

[1] It should be noted that the IRS is the only defendant to have filed a response to PFP's motion for summary judgment.  As part of its response, the IRS has submitted evidence that the lien held by Defendant Georgia Department of Revenue ($137.31) has been cancelled.  *See* Tab 57, Ex. A.  Therefore, any claim by the Georgia Department of Revenue in this amount is hereby dismissed.

any sale proceeds from the instant action.  This assignment was made in consideration for the Beddingfields' payment to the Bank of approximately $278,000.  Now seeking to assert their rights under the assignment, the Beddingfields, standing in the shoes of the Bank, allege a counterclaim for attorneys fees and damages against PFP, arguing that PFP breached its responsibilities under the SPC Agreement and the letter agreement.

In response, PFP maintains that the Beddingfields are not proper parties to assert these allegations, as the Bank was not a party to the SPC Agreement.  Additionally, according to PFP, the Beddingfields do not complain that PFP has violated any obligations owed to the Bank, *i.e.*, the obligations violated, if any, were owed to Honey Creek.  Finally, PFP argues that summary judgment is appropriate in its favor because the Beddingfields have presented no evidence to support their counterclaim.  Without deciding whether the Beddingfields are appropriate parties to assert these allegations, the Court agrees with PFP and finds that, even if they are proper parties, there has been no evidence presented to suggest that PFP has breached any obligations with respect to the SPC Agreement or the letter agreement.  Summary judgment in favor of PFP on the Beddingfields' counterclaim is therefore appropriate.[2]

Regarding the personnel commissions owed to the Youngbloods under the SPC Agreement, the Beddingfields assert that all sums "should be paid to the Beddingfields or to other proper creditors of Honey Creek, as determined by the Court."  *See* Ans. of Beddingfields, tab 8, at 4 ¶21.  However, as the IRS points out in its response to PFP's

---

[2] The conclusion as to the Beddingfields' counterclaim for attorney's fees and damages does not, of course, jeopardize any rights they may have to receive proceeds otherwise owed to the Bank for the Youngbloods' underlying secured debt.

motion for summary judgment, these personnel commissions represent unsecured obligations of Honey Creek and, as such, are subordinate to any unsatisfied perfected security interests.  Assuming these commissions are properly payable to the Beddingfields and not the Youngbloods, the only way the Beddingfields would be entitled to receive any amount is if there were an excess of funds left over after all perfected secured parties are paid.  From the evidence before the Court it appears that the total amount of money owed to perfected secured parties exceeds the total net sales proceeds—$110,632.24. Therefore, the Beddingfields, as unsecured creditors, are not be entitled to receive any of the $19,567.87.  No evidence to the contrary having been presented, the Court finds that summary judgment in favor of PFP is appropriate on this counterclaim.

            3.    Benjamin Scott Youngblood

        Benjamin Youngblood asserts a counterclaim against PFP for breach of the SPC Agreement, alleging that: (1) PFP caused excessive charges to be drawn against the expense account referenced in the SPC Agreement, and that (2) PFP should not be entitled to pay its attorney's fees using any of the interpleaded funds.  In response, PFP insists that any alleged injury resulting from a breach of the SPC Agreement would have been sustained by Honey Creek, not Benjamin Youngblood.  PFP also argues that these allegations have not been supported by any evidence.  The Court agrees.  Benjamin Youngblood, having full knowledge of PFP's motion for summary judgment failed to respond and, furthermore, failed to present any evidence to substantiate his contentions. As a consequence, the Court concludes that, there being no dispute as to any material fact, judgment as a matter of law in favor of PFP is appropriate as to this counterclaim.

B.    IRS's Motion for Summary Judgment

The IRS has filed a cross-claim against the Bank seeking disgorgement of certain liquidation proceeds paid to the Bank before the initiation of this interpleader action.  These proceeds were paid by PFP, pursuant to the SPC Agreement and the letter agreement, to satisfy the Youngbloods' loan obligations to the Bank.  The IRS contends that its federal tax lien against the proceeds has priority over the security interest asserted by the Bank in the same proceeds.  It therefore submits that the Bank must turn over these tortiously converted proceeds.  The Bank, on the other hand, challenges the claim for disgorgement on the grounds that its perfected security interest in the proceeds was and continues to be superior to the federal tax lien.

In support of its motion for summary judgment, the IRS offers two arguments.  First, it maintains that any security interest obtained by the Bank in 1999 was never perfected because the financing statement  inadequately described the collateral.  Alternatively, the IRS submits that, if the Bank's interest was initially perfected, it became unperfected four months after the Youngbloods' furniture business was incorporated because the filed financing statement was never amended to reflect the debtor's subsequent name change. Before determining whether the IRS or the Bank has a superior priority status, the Court must first determine whether a valid lien or security interest ever attached to the proceeds at issue.

1.    <u>The Federal Tax Lien</u>

The Court has no difficulty concluding that the United States holds a valid federal tax lien over the sale proceeds.  The IRS is a statutory lien holder with respect to the

property of Benjamin S. Youngblood, Inc.—a delinquent taxpayer. *See* 26 U.S.C.A. § 6321 (West 2002).  Unlike most security interests, which are voluntarily granted by the debtor, federal tax liens are not consensual.  Section 6321 of the Internal Revenue Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  The IRS's lien against the sale proceeds currently held by PFP arose by operation of law "at the time the assessment[s] [were] made."  26 U.S.C.A. § 6322.  In this case, tax deficiencies were assessed against Benjamin S. Younglbood, Inc. when its tax returns for the tax years 2000, 2001, and 2002 were filed.  By the statute's own terms, this lien exists to the full extent of the delinquent taxpayer's interest in "property and rights to property."  The phrase is broadly worded and was intended by Congress "to reach every interest in property that a taxpayer might have."  **United States v. Nat'l Bank of Commerce**, 472 U.S. 713, 720 (1985).

The Bank argues that summary judgment in favor of the IRS is inappropriate because there "remains a factual dispute as to exactly what assets or proceeds of [ ] assets their [sic] lien may have attached, if any."  Citizens Bank's Brief in Opp'n to IRS Mot. for Summ. J., tab 58, at 3.  The Bank appears to maintain that the assets purchased by the Youngbloods with the 1999 loan proceeds were titled in the name of the Youngbloods personally and not the corporate entity Benjamin S. Youngblood, Inc.  Therefore, according to the Bank, the IRS cannot assert a tax lien over these assets (or the proceeds received from their disposition) because it has not proffered evidence to show that title ever passed

from the Youngbloods individually to Benjamin S. Youngblood, Inc.—the delinquent taxpayer.

It is true that at the time the IRS made the assessments giving rise to the federal tax lien, the Youngbloods' furniture business had already been incorporated in the name of Benjamin S. Youngblood, Inc.  However, the Subchapter S Corporation Tax Returns submitted by the IRS demonstrate that the inventory and assets in question were purchased by Benjamin S. Youngblood, Inc., not by the Youngbloods personally. Accordingly, the inventory and other assets (and the proceeds thereof) belonging to Honey Creek represented "property or rights to property" of Benjamin S. Youngblood, Inc. at the time each IRS tax assessment and demand for payment was made.

2.    _The Bank's Security Interest_

The Court finds that, at the time the Bank loaned money to the Youngbloods in 1999, it acquired an enforceable security interest in all of the furniture store's inventory and other assets.  The law of secured transactions is governed by the Uniform Commercial Code ("UCC"), as adopted by the Georgia legislature.  Under O.C.G.A. §11-9-203, an enforceable security interest attaches to a debtor's collateral when (1) value has been given; (2) the debtor has rights in the collateral; and (3) the debtor has signed a security agreement describing the collateral.[3]  There is no dispute that each of these elements was satisfied as of February 4, 1999—the date on which the Bank claims to have obtained its security interest.  The Bank loaned  the Youngbloods $550,000 (value); the Youngbloods used the loan proceeds to purchase the collateral (giving them rights in the collateral); and

_____

[3] The third requirement may sometimes be satisfied in other ways that are inapplicable here.

12

the Youngbloods signed a security agreement describing the collateral.  To ensure the priority of its security interest as against third parties, the Bank perfected its interest by filing a UCC-1 financing statement on February 22, 1999.  The financing statement listed the debtors as Benjamin Scott Youngblood and Laura B. Youngblood.

3.    *Priority Disputes Involving a Federal Tax Lien*

Having found that the IRS's federal tax lien and the Bank's security interest are valid, the Court now proceeds to determine which interest has senior priority status.  In this situation, once a federal tax lien arises, "federal law governs the priority of competing liens asserted against a taxpayer's property."  **Griswold v. United States**, 59 F.3d 1571, 1575 (11th Cir. 1995).  It has been recognized that "[f]ederal tax liens do not automatically have priority over all other liens [or security interests]."  **United States By and Through I.R.S. v. McDermott**, 507 U.S. 447, 449 (1993).  Rather, as the IRS points out, "priority for purposes of federal law is governed by the common-law principle that the first in time is the first in right."  **Id.** (internal quotation marks omitted) (quoting **United States v. City of New Britain**, 347 U.S. 81, 85 (1954)).  Congress, however, has modified that principle somewhat by imposing on the government a filing requirement in order to achieve priority over competing security interests in the taxpayer's property.  Section 6323(a) provides that a federal tax lien "shall not be valid as against any . . . holder of a security interest . . . until notice thereof which meets the requirements of subsection (f) has been filed."  26 U.S.C.A. §6323(a).  "Therefore, any 'security interest' which arises prior to the proper filing of a federal tax lien takes priority over the tax lien."  **Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp.**, 106 F.3d 366, 368 (11th Cir. 1997).  No challenge has been

raised with respect to the validity of the IRS's filed lien notices.  Accordingly, the Court will limit its inquiry to whether the Bank held a "security interest," as that term is used in the Internal Revenue Code, prior to the time the notices were filed.

A "security interest" is defined by the Internal Revenue Code as:

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability.  A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

26 U.S.C.A. §6323(h)(1).  In order for the Bank's claim to the liquidation proceeds to have priority over the federal tax lien, it must have held a § 6323 "security interest" on March 11, 2002—the date on which the IRS filed its first Notice of Tax Lien.  To qualify under the statute, the Bank must show: "(1) that the security interest was acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying loss; (2) that the property to which the security interest was to attach was in existence at the time the tax lien was filed; (3) that the security interest was, at the time of the tax lien filing, protected under the state law against a judgment lien arising out of an unsecured obligation; and (4) that the holder of the security interest parted with money or money's worth."  *Litton*, 106 F.3d at 368 (citing *In re Haas*, 31 F.3d 1081, 1085 (11th Cir. 1994)).  At issue in this case is whether the third condition is satisfied.  Therefore, if the Bank held a perfected security interest under Georgia's UCC provisions prior to the filing of the federal tax lien notices, its interest in the sale proceeds is superior to that of the IRS.  On the other hand, if the Bank's security interest was unperfected at the time the tax lien

14

notices were filed, the IRS will have the superior interest. *See **Aetna Ins. Co. v. Tex. Thermal Indus., Inc.**,* 591 F.2d 1035, 1038 (5th Cir. 1979) ("[Section] 6323 specifically subordinates federal tax liens to security interests such as those . . . that are perfected under the U.C.C. provisions of state law prior to the filing of the tax lien.");[4] *see also **Atlantic States Const., Inc. v. Hand, Arendall, Bedsole, Greaves and Johnston, et al.**,* 892 F.2d 1530, 1535 (11th Cir. 1990).

The IRS argues that it is entitled to summary judgment for two reasons. First, it maintains that the Bank's security interest was never perfected because its financing statement failed to adequately describe the collateral. Second, the IRS contends that, even if the collateral description was adequate, the Bank's security interest nevertheless became unperfected when the financing statement was not amended to reflect the incorporation of the Youngbloods' furniture business. The Court will consider each of these arguments in turn.

a.      Insufficient Description of Collateral

In order to perfect a security interest in a debtor's collateral, a financing statement must, among other things, indicate which collateral is covered by the security agreement by describing the collateral in accordance with O.C.G.A. §11-9-108. *See* O.C.G.A. §11-9-504(a)(1) (Lexis 2002). In a financing statement, as opposed to a security agreement, collateral need only be reasonably identified. O.C.G.A. §11-9-108 ("a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies

_____

[4] The Eleventh Circuit Court of Appeals has adopted as binding precedent all decisions issued by the former Fifth Circuit prior to October 1, 1981. *See **Bonner v. City of Prichard**,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

what is described.").  It has long since been the case that a description of collateral in a financing statement "is sufficient if [it] provides such a key to the identity of the property as would enable a person of ordinary business prudence, upon inquiry, to discover the actual identity of the property described."  *In re Envtl. Elec. Sys.*, 11 B.R. 965, 966 (Bankr. N.D. Ga. 1981); *see Peoples Bank of Bartow County v. Northwest Ga. Bank*, 228 S.E.2d 181, 183-84 (Ga. Ct. App. 1976) ("the physical description . . . must raise a warning flag, as it were, providing a key to the identity of the property.").[5]

The IRS contends that the Bank's security interest in all of the proceeds from Honey Creek's liquidation is unperfected and, thus, subordinate to the tax lien of the United States.  It supports this conclusion by arguing that the Bank's financing statement does not sufficiently describe the collateral because it lists only the assets of "Old Salem Furniture," making no mention of assets held by "Honey Creek Home Furnishings" or "Benjamin S. Youngblood, Inc."  *See* IRS Mot. for Summ. J., tab 55, at 7.  However, the IRS overlooks two important pieces of information, which the Court finds detrimental to its claim.  First, the description of collateral in the Bank's financing statement provides the address where the collateral is located.  It says, in pertinent part, that the Bank has a security interest "in all Assets, Now Owned or Hereafter Acquired of Old Salem Furniture located at 3565 Highway 20 South, Conyers, Georgia and Any Other Location Where Business is Transacted."[6]  Second, as evidenced by subsequent documents, Honey Creek Home

---

[5] Though these cases were decided under former Article 9, the provisions at issue here are identical.

[6] The security interest in these assets extends also to the identifiable proceeds received from their disposition upon PFP's liquidation sale.  *See* O.C.G.A. §11-9-203(f) and §11-9-315(a)(1).

16

Furnishings and Benjamin S. Youngblood, Inc. both transacted business at the very address provided for Old Salem Furniture—3565 Highway 20 South, Conyers, Georgia.

The inclusion in the financing statement of a readily identifiable physical location where the collateral may be found, coupled with the fact that each of the Youngbloods' furniture stores operated at that location, leads the Court to conclude that the description of the collateral in the financing statement was sufficient under the UCC and the applicable case law.  These two pieces of information "provide[ ] such a key to the identity of the property as would enable a person ordinary business prudence, upon inquiry, to discover the actual identity of the property described."  *In re Envtl. Elec. Sys.*, 11 B.R. at 966; *see Womack v. Newman Fixture Co.*, 766 S.W.2d 949, 952 (Ark. Ct. App. 1989) (noting that an otherwise deficient description of collateral in a financing statement could be cured by including information about "where the equipment could be located.").  Accordingly, judgment as a matter of law in favor of the IRS is not appropriate as to this argument, and its motion for summary judgment must be denied.

b.   Effect of Debtor's Name Change

In order to perfect a security interest in a debtor's collateral, a financing statement must also provide the name of the debtor.  *See* O.C.G.A. §11-9-502 (Lexis 2002).  As long as the name of the debtor is included in the financing statement, it is effective "even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading." O.C.G.A. §11-9-506(a).  A financing statement containing an error in the debtor's name is not seriously misleading "[i]f a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose [it]."  O.C.G.A. §11-9-506(c).  If a debtor's name change does make

the financing statement seriously misleading, and the change is not corrected by amendment, the financing statement "is effective to perfect a security interest in collateral acquired by the debtor before, or within four months after, the change."  O.C.G.A. §11-9-507(c)(2).

As noted above, the financing statement filed by the Bank on February 22, 1999, listed the debtors as Benjamin Scott Youngblood and Laura B. Youngblood.  However, several weeks after the financing statement was filed, Mr. Youngblood incorporated his furniture store as Benjamin S. Youngblood, Inc.  The Bank, which maintains it was not notified about the incorporation, never filed a new or amended financing statement to indicate the name change.  The IRS argues that this change in the debtor's name rendered the financing statement seriously misleading and therefore ineffective to perfect a security interest with respect to any collateral acquired by the debtor more than four months after the change.  *See* O.C.G.A. §11-9-508(c)(2) ("The financing statement is not effective to perfect a security interest in collateral acquired by the debtor more than four months after the [debtor's name] change, unless and amendment to the financing statement which renders the financing statement not seriously misleading is filed within four months after the change.").

To support its position, the IRS relies on two cases: ***First Agri Serv., Inc. v. Kahl, et al.***, 385 N.W.2d 191, 194 (Wis. 1986) and ***Citizens Bank v. Ansley***, 467 F. Supp. 51 (M.D. Ga. 1979), *aff'd*, 604 F.2d 669 (5th Cir. 1979).  In ***Kahl*** the Wisconsin Supreme Court held that a financing statement listing Gary Kahl and Dale Kahl as debtors was seriously misleading and, therefore, ineffective to perfect a security interest in the collateral of the debtors' subsequently created partnership, "Kahl Farms."  The court noted that, in

18

considering whether a debtor's name change is seriously misleading, "[t]he extent and character of the change is, of course, significant" and that courts "should not resort to hypertechnicality." 385 N.W.2d at 195. After all, the court reasoned, the purpose behind the UCC's filing requirements is to provide notice to third parties of potential competing security interests, and as long as a financing statement contains sufficient information to allow a reasonably diligent third party to identify those interests it is not seriously misleading. *Id.* at 194. The court found that a reasonably diligent third party searching solely under the name "Kahl Farms" would not have discovered the existence of financing statements filed under the names of the individual debtors. The court pointed out that an index search under "Kahl Farms" would not reasonably prompt a search under the names Gary Kahl and Dale Kahl. To hold otherwise would "burden a potential creditor with a duty to make an unprompted general inquiry [that] would frustrate the intent fo the statute to create a simple and clear notice filing system." *Id.* at 196.

In *Ansley* this Court held that a financing statement listing the debtor as "Ansley Farms" was not effective to perfect a security interest in collateral of an individual debtor named Emory Ansley. 467 F. Supp. at 55. In so holding, the Court rejected a line of cases—typified by *In re Platt*, 257 F. Supp. 478 (E.D. Pa. 1966)—it viewed as permitting careless and sloppy filing practices. In *In re Platt* the court held that a financing statement listing the debtor as "Platt Fur Co." was sufficient to perfect a security interest in the collateral of an individual debtor named Henry Platt. The Court in *Ansley* rejected the *In re Platt* approach because an interpretation of the UCC in keeping with that decision would "place a heavy burden on prospective creditors" by forcing them to correlate the "business entity listed [in the filing records] with the individual they are investigating" (and

19

vice versa).  *Id.*   Consequently, the Court found that "Ansley Farms" was a seriously misleading description of the true debtor Emory Ansley.

In the present case, however, both *Kahl* and *Ansley* are readily distinguishable. Courts applying the UCC in Georgia recognize that a financing statement becomes seriously misleading when the names of the debtors are *completely dissimilar.  See In re Cohutta Mills, Inc.*, 108 B.R. 815 (N.D. Ga. 1989) (finding a financing statement to be seriously misleading when it was not amended to show the debtor's name change from "King's Tuft" to "Cohutta Mills"); *see also Western Auto Supply Co. v. McKenzie*, 489 S.E.2d 537, 539 n.1 (Ga. Ct. App. 1997) (noting that "[a] financing statement becomes seriously misleading when the two names are completely dissimilar, as are WASLA, Inc. and John Hadden, *such that a creditor searching under WASLA, Inc. would not be alerted to inquire into John Hadden's interests.*").   The results in both *Kahl* and *Ansley* were compelled because of the dissimilarity between the true debtor and the debtor listed in the financing statement.   Even though the debtors' names in those cases were not one hundred percent dissimilar—in each case the names shared at least one word in common—they were sufficiently distinct that filing under one name would not reasonably put a creditor on notice that he ought to conduct a separate search under another name to find competing security interests in the same collateral.   Again, notice is the primary purpose of the UCC's filing requirements.   If a filing is sufficient to put a creditor on notice of other potential security interests, it is not seriously misleading.

The corollary to the rule of complete dissimilarity is that a financing statement is not seriously misleading where, as here, the debtor's changed name is only nominally different than the debtor's name as originally listed.   One of the debtors listed on the Bank's

financing statement is "Benjamin Scott Youngblood."  The debtor subsequently changed his business structure by incorporating under the name "Benjamin S. Youngblood, Inc." The IRS now claims that the Bank's security interest, perfected long before the federal tax lien arose, in the collateral of Benjamin Scott Youngblood (his furniture store's inventory and other assets) has lost its perfected priority status with regard to the collateral of Benjamin S. Youngblood, Inc.  However, the Court is unable to conclude, as a matter of law, that this name change renders the original financing statement seriously misleading under O.C.G.A. §11-9-506.  A search of the filing records under the name "Benjamin S. Youngblood, Inc." would almost assuredly turn up a financing statement filed under the name Benjamin Scott Youngblood.  It is therefore reasonable to conclude that a diligent creditor searching the filing records under the name Benjamin S. Youngblood, Inc. would be put on notice to inquire into the interests of a debtor listed as Benjamin Scott Youngblood.  As a result, the name change cannot be considered seriously misleading. Accordingly, the Bank's security interest remained perfected at all times and the IRS's motion for summary judgment must be denied.

## IV.    CONCLUSION

       For the foregoing reasons, the Court finds that the parties' claims to the sale proceeds, currently held by PFP, rank as follows:

1.    PFP has a perfected security interest in the net sales proceeds, entitling it to $49,354.80.

2.    The Beddingfields, as assignees of the Bank, have a perfected security interest in the net sales proceeds only to the extent of Honey Creek's unsatisfied loan indebtedness, if any, owed to the Bank.

3.    The IRS has a federal tax lien against any remaining net sales proceeds to the extent of the unpaid taxes of Benjamin S. Youngblood, Inc.

The Motion for Summary Judgment filed by Planned Furniture Promotions, Inc. is hereby **GRANTED** in part and **DENIED** in part.  The Motion for Summary Judgment filed by the IRS is hereby **DENIED.**

SO ORDERED, this 25th day of April, 2005.

/s/ **Duross Fitzpatrick**
DUROSS FITZPATRICK, JUDGE
UNITED STATES DISTRICT COURT

DF/sew